**STATE ex rel. COM'RS of LAND OFFICE et al. v. SMITH et al.**

No. 11101—Opinion Filed May 12, 1925.

**Public Lands — State School Land Department—Embezzlement by Chief Clerk—Liability on Secretary's Bond.**

No liability attaches on the bond of a secretary to the Commissioners of the Land Office on account of the embezzlement of certain funds belonging to the state by a chief clerk employed by the Commissioners of the Land Office, and removable only by them, where the said clerk has given a fidelity bond, payable to the state, and where it is shown that the secretary did not act in collusion with the said clerk and had no knowledge of the clerk's dishonest acts.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by the State of Oklahoma, on relation of the Commissioners of the Land Office, against George A. Smith and the United States Fidelity & Guaranty Company. From judgment in favor of defendants, plaintiffs bring error. Affirmed.

Geo. E. Merritt, for plaintiffs in error.

Burford, Miley, Hoffman & Burford and Ames, Lowe & Richardson, for defendants in error.

Opinion by PINKHAM, C. This action was instituted by the plaintiffs in error, as plaintiffs, against George A. Smith and the United States Fidelity & Guaranty Company, as defendants, and was based upon the official bond of George A. Smith, as secretary to the Commissioners of the Land Office, and the United States Fidelity & Guaranty Company, as surety.

The bond in question was conditioned as follows:

"That whereas the above bounden, George A. Smith has been appointed secretary of the Commissioners of the Land Office of the state of Oklahoma.

"Now, therefore, if the said George A. Smith shall render a true account of his office and of the doings therein to the proper authority, when required thereby or by law; and shall properly pay over to the person or officers entitled thereto, all money which may come into his hands by virtue of his said office and shall faithfully account for all the balances of money remaining in his hands at the termination of his office; and shall hereafter exercise all reasonable diligence and care in the preservation and lawful disposal of all money, books, papers, and securities, all other property appertaining to his office, and deliver them to his successor, or to any person authorized to receive the same, and if he shall faithfully and impartially, without fear, favor, fraud, oppression, discharge all other duties now or hereafter required of his office by law, then this bond to be void; otherwise to be and remain in full force and effect."

The case was tried upon an agreed statement of facts, from which it appears that George A. Smith was secretary to the Commissioners of the Land Office, having been appointed to, or employed in, that position by the commissioners. The United States Fidelity & Guaranty Company was surety on his bond, conditioned as heretofore set out.

The stipulation states that one Claude Ray was chief clerk in the sales division or department in the office of the Commissioners of the Land Office, being employed from the 12th day of January, 1915, to the —day of May, 1917; that he was employed by and appointed by the Commissioners of the Land Office themselves and was removable by them; that he was under bond directly to the state of Oklahoma, conditioned to pay and make good to the state of Oklahoma such pecuniary loss that said state should sustain of any moneys, or other personal property, by reason of any act or acts of larceny, embezzlement, wrongful abstraction, or misappropriation, directly or through connivance with others, on the part of Claude Ray, during the period of his employment.

Reference is made in the stipulation to the Session Laws of 1915, which created the State Treasury as the official depository for all moneys, rentals, and public charges received or collected by any state official, state board, state commission, or any employe of such office, board, or commission, and that such law became effective July 1, 1915; that on June 14, 1915, after the passage, but before the taking effect of said Act, the secretary to the Commissioners was directed to modify the State Treasurer that as soon as he qualified under the provisions of the law, the Commissioners, through the secretary, were ready to turn over all funds in the custody of the said board in accordance with the said law; that on the 14th day of July, 1915, the State Treasurer executed bond required of him under the said Session Laws of 1915, which qualified the said State Treasurer as the official depository under the Session Laws of 1915; that soon after July 14, 1915, the said George A. Smith deposited with the

State Treasurer as official depository, the major portion of the funds received in the office of the Commissioners of the Land Office. At first, as the State Examiner and Inspector had not prepared the proper form of warrant or voucher upon which to draw upon said official depository as the business of the Commissioners of the Land Office required to be done daily and continually, and later through inadvertence and oversight he failed to deposit all of said funds in said official depository; and between July 14, 1915, and May 1, 1917, there was about $100,000 of such funds in the Tradesmen's State Bank of Oklahoma City, in the name of the Commissioners of the Land Office, subject to be disbursed upon checks signed by the said George A. Smith, as such secretary, or by one Horace Wilson, as assistant secretary; that on divers dates between the 14th day of July, 1915, and the 1st day of May, 1917, there was withdrawn from the said Tradesmen's State Bank, upon numerous checks made in various amounts signed by the name of George A. Smith, or with the name of Horace Wilson, who was authorized to sign the name of George A. Smith, practically the entire amount of the said funds so deposited therein, except the sum of $8,980, which said sum was embezzled and misappropriated by the said Claude Ray, in the manner disclosed by the stipulation; that prior to the creation and designation of the State Treasurer as official depository, the manner and custom of the Commissioners of the Land Office was for the chief clerk of any of the departments or divisions to prepare checks drawn upon the funds belonging to the Commissioners of the Land Office to the person to whom money was due from said Commissioners, said checks to be countersigned by the chief clerk when presented to the said George A. Smith, as secretary to said Commissioners, or Horace Wilson, as assistant secretary, for signing, and upon the signing thereof said check was delivered to a clerk to be mailed to the payee thereof; that after the designation of the State Treasurer as official depository the chief clerk drew and countersigned warrants upon said official depository and presented the same to the secretary or assistant secretary for signing.

It is agreed by the parties that the said George A. Smith was not in collusion or connivance with the said Claude Ray, and had no knowledge or cause to suspect that the said Claude Ray was embezzling or misappropriating any of said funds.

Upon substantially this state of facts the trial court found for the defendants, and judgment was rendered in accordance with such finding.

Plaintiffs have duly appealed to this court and assign as error: (1) That the district court erred in rendering judgment for the defendants; and (2) that the district court erred in not rendering judgment for the plaintiffs in error and against the defendants in error on consideration of the agreed statement of facts upon which the cause of action was submitted to and tried by that court in the sum of $8,980.11, together with interest thereon.

Both assignments of error present the same proposition; that the lower court erred in its application of the law to the agreed statement of facts: and the arguments and authorities cited by the plaintiffs in error are all presented in this one proposition.

The legitimate inference to be drawn from the argument of counsel for plaintiffs is that the failure of the secretary to the Commissioners of the Land Office to cause the fund which had been lawfully deposited in the Tradesmen's State Bank to be transferred to the State Treasurer as provided by the Act of 1915, is sufficient in itself to make George A. Smith and his surety liable for the sum embezzled by the chief clerk of the Sales Department in the office of the Commissioners of the Land Office, notwithstanding the fact that the chief clerk had given a bond to the state of Oklahoma, to protect it against any act of embezzlement, etc., committed by the chief clerk.

We gather from the agreed statement of facts that the transfer of the funds from the Tradesmen's State Bank to the State Treasurer would have made no difference, so far as the opportunity of embezzling the same was concerned. The only difference in the procedure was that instead of preparing, signing, and countersigning a check on the Tradesmen's State Bank, there would have been, and there were, prepared, signed, and countersigned, warrants upon the State Treasurer, the warrants simply taking the place of a check.

It was stipulated that when a warrant was so prepared, signed and countersigned, the Treasurer paid the same as the bank paid the checks. In other words, the transfer of the fund would have thrown no greater safeguards around the fund.

The cause of the loss of the money involved was the criminal act of the chief clerk of that particular division or department of the Land Office, and an examina-

tion of the agreed statement of facts discloses that he would have had the same opportunity, through the same plan and device, used by him in either depository, and in order to protect and secure the state against such acts on the part of Claude Ray, he was personally required to give, and did give, a fidelity bond to the state.

The full effect of the agreed statement of facts is that the money was not lost because it remained on deposit in the Tradesmen's State Bank.

The case of District of Columbia v. Petty, 229 U. S. 593, is similar in many respects to the facts in the instant case. In that case, James T. Petty, the auditor of the District of Columbia, had given a bond conditioned that he "shall faithfully and efficiently perform all the duties of his said office as provided for by law and the rules and regulations from time to time duly prescribed for the government of the civil service of said district; and shall well and truly pay over, disburse, and account for all moneys that shall come into his hands, as the law and orders governing said service shall require."

Under rules promulgated by the order of the district commission, certain moneys were deposited for the purpose of paying for certain special improvements known as "permit work," and were paid out upon the order of the auditor. Subordinate to the auditor was a disbursing clerk, the position being created by act of Congress. This clerk was subordinate to the commission, appointed by them, and removable by them. The regulations provided that this money should be deposited with the Treasurer of the United States, or in a certain designated bank to the credit of deposit and assessment fund—the fund out of which payment for the "permit work" was made.

It is said in the opinion:

"Four of the assigned breaches set up that certain checks, some drawn by the disbursing officer and countersigned by the auditor and others drawn by the auditor, all payable to his order, as auditor, and indorsed by him as such, should have been deposited by him 'in accordance with law and the rules governing the conduct of his office' with the Treasurer of the United States; or should 'in accordance with law and the rules and regulations aforesaid' have been deposited in a certain bank as reimbursement of the deposit and assessment fund; or should have been deposited in bank to the credit of Petty as auditor for the benefit of the whole cost of the work, etc.; that in each instance the checks, having been in-

dorsed, were not so deposited, but were cashed and the proceeds never paid or accounted for to the plaintiff, etc. For reasons already mentioned the pleader has studiously refrained from averring that these checks were cashed by Petty, or that the proceeds thereof in any way came to his hands. The legitimate inference is to the contrary, and that some other official, for whose misconduct Petty was not, by law, responsible, took the proceeds."

It is held in this case that neither Petty nor the bondsman was liable upon two grounds: (1) That the funds were not public money; (2) that Petty was not responsible for the acts of the disbursing clerk.

The rule stated in 22 R. C. L., sec. 166, is as follows:

"Public officers and agents of the government are not liable for the acts or defaults, negligence, or omissions of subordinate officials, in the public service, whether appointed by them or not, unless they direct the act complained of to be done, or personally cooperated in the negligence from which the injury results. * * * The exemption of public officers from responsibility for the acts and defaults of those employed by or under them in the discharge of their public duties, is allowed in a great measure from considerations of public policy."

In the case of State v. Allen, 46 S. W. 303, the Court of Chancery Appeals of Tennessee considered a case where the state comptroller had made an unauthorized deposit of money in a bank, and the court there said:

"Confining ourselves to this record, if we could see that the state suffered any damage by reason of the arrangement that was made under which this money was deposited with said bank, we would have no hesitancy in holding that the comptroller and sureties were liable and that his good intention would not relieve him from liability. We take it that if an official of the state, handling its revenues, commits an act which does an injury to the state, he will, if his act be without the sanction of law, be liable to the state for all the damages it sustains in consequence of his conduct. But if an official does an act not sanctioned by the law, under the honest belief that his act will redound to the good of the state, he will not be responsible therefor unless it appear that damage resulted to the state in consequence of it. This is the aspect of this case on this subject."

It cannot be said that any damages resulted to the state by reason of the deposit of these funds in the Tradesmen's State Bank, in view of the statements in the stipulation. Furthermore, there is nothing in

the agreed statement of facts to show that the secretary received or deposited any money in the Tradesmen's State Bank. It was not deposited there by him or in his name. It was there in the name of the Commissioners of the Land Office.

Claude Ray, who embezzled the money in question, was under bond to the state, and suit was brought upon his bond and judgment rendered therein up to the amount of the bond, $5,000, as the records of this court disclose.

In the case of Van Trees v. Territory, 7 Okla. 353, 54 Pac. 495, cited by plaintiffs in error, in their brief, the question of a depository was not involved. It was a case that had to do with a county treasurer and his bond. The county treasurer was a public official having title in his official capacity to the fund. It was held that the fact that he had deposited the funds in a solvent bank, which thereafter failed, in consequence of which the funds were lost, without any fault or neglect on the part of the treasurer, did not exempt the treasurer from liability. In other words, as he had title in his official capacity to the fund and could handle it as he saw fit, he was therefore an insurer of it.

The case of State ex rel. v. McCloud, 64 Okla. 126, 166 Pac. 1065, is also cited and relied upon. That was also a case of a county treasurer. On rehearing in that case, it was held that when the county treasurer, who was a public official and in his official capacity had title to the fund, deposited the same in a bank duly designated as a county depository and which bank had given a bond, the county treasurer was not liable for the loss of the funds within the amount of the bond given by the bank, caused by the failure of the depository.

The court held, however, in that case, and also in Hinton v. State ex rel., 57 Okla. 777, 156 Pac. 161, that where the county treasurer had deposited in a bank designated as the county depository an amount in excess of the bond given by the bank and the same was lost by the bank's failure, then the treasurer and his surety are liable for the amount so lost in excess of the depository bond.

In these cases the county treasurer had deposited in such bank a sum in excess of the amount of the depository bond. Not only had the treasurer violated the law, but also his act is so violating the law contributed to and was the reason for the loss; that is to say, if the treasurer had not violated the statute the loss would not have occurred.

These cases are not analogous to the instant case.

In the present case the Tradesmen's State Bank did not fail, and we are forced to the conclusion, in view of the agreed statement of facts, that the loss was not caused by the money being left on deposit in that bank.

We have examined the cases cited in plaintiffs in error's brief from other jurisdictions, but we are unable, in view of the facts involved in those cases, to see their applicability to the instant case.

It must be borne in mind that the statute recognizes that each and all of the employes in the Land Department—which includes the secretary, Smith, and the chief clerk, Ray—had to do with the "loaning, investing, re-investing, and depositing of the permanent common school fund" (Session Laws 1910, chapter 109); that section 4, ch. 253, Session Laws 1915, provides that:

"Said employes shall do and perform such acts and duties as the Commissioners of the Land Office may direct in connection with the management, loaning, investing, and re-investing of the permanent common school fund, and the managing, leasing, and selling of state and school lands."

The further fact that each and all of the statutes on the subject required all of the other employes to give a bond for their faithfulness and honesty in dealing with this fund, which bond was given directly to the state and not to the secretary to the Commissioners, shows, we think, that it was not the purpose to make the secretary and the surety on his bond an insurer of the fund and liable for other employes' criminal acts.

We conclude, upon a careful examination of the agreed statement of facts, upon which the case was tried, and a review of the legislation with respect to the School Land Department and the status of the various employes connected therewith, that there was no liability on the part of either the secretary to the Commissioners of the Land Office, or his surety, by reason of the embezzlement committed by the chief clerk.

We think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.